|      |      |
| ---- | ---- |
| 204  | 543  |
| f219 | ¹389 |

# Enright *v.* Pittsburg Junction Railroad Company, Appellant.

*Negligence—Injury to infant—Contributory negligence of father—Province of court and jury.*

The court cannot say as a matter of law that a father is guilty of contributory negligence in permitting his boy, eleven years old, to go alone on the street on a Sunday, and to stroll along railroad tracks a square and a half away from his home.

*Negligence—Evidence—Payment of money to witnesses—Charge of court.*

In an action against a railroad company to recover damages for injuries to a boy under age, where it appears that an agent of the defendant had paid small sums of money to two boys who had seen the accident and who were called as witnesses, and the agent testifies that these payments were made to the boys for their car fares and dinners, and there is proof that the counsel for the plaintiff was prevented from speaking to the boys in court by the defendant's agent, it is not improper for the court to leave it to the jury to determine whether the payments had been legitimately made, or for the purpose of influencing the testimony of the boys.

*Negligence—Evidence—Conflicting statements of plaintiff.*

In an action against a railroad company to recover damages for personal injuries to a boy under age, where the defendant produces evidence tending to show that the statements made by the boy in the hospital materially differed from his statements made at the trial, and it also appeared that when the boy was interviewed in the hospital, one leg had been amputated, the other was badly lacerated, and his head was cut open, it is not error for the court to charge that "if he was suffering such pain at that time as to not know what he was talking about or as to affect his knowledge of the subject, then you take that into consideration as to whether this interview does affect his credibility or not and to what extent."

Argued Nov. 3, 1902.   Appeal, No. 80, Oct. T., 1902, by defendant, from judgments of C. P. No. 3, Allegheny Co., Aug. T., 1899, No. 363, on verdict for plaintiff in case of Patrick Enright, in his own right, and Joseph Enright, by his Father and Next Friend, Patrick Enright, v. Pittsburg Junction Railroad Company.   Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before EVANS, J.

For prior report of the case, see 198 Pa. 166.

At the trial it appeared that the plaintiff, a boy about eleven years old, was injured on the afternoon of Sunday, September 5, 1897, while on a moving freight car.    The conflicting testimony as to the circumstances of the accident are stated in the charge which was in part as follows :

The plaintiff, Joseph Enright, with two other boys, McCarthy and Reardon, on the day of this accident, boarded a train of the Baltimore & Ohio Railroad Company which was being transported across on the tracks of this defendant company, for the purpose of going over to Schenley Park, and in getting off the train while it was in motion, this plaintiff was injured.

The important question for you to determine first, is the circumstances surrounding the injury,—how he came to get off the train.    If he got off the train of his own motion, then he is not entitled to recover.    He alleges, however, that he did not intend to get off the train, but that a brakeman on the train flourished his brake stick and yelled at him to get off, and through fear of the brakeman he jumped off the train and was injured.    Now, that will be the first question of fact which will present itself to you to determine; and it is for you to determine under the evidence in this case, whether it was through fear of injury to him by the brakeman or the railroad detective, whom the brakeman had called, as he said, that caused the boy to jump off while the train was in motion, or whether he got off of his own accord. You have heard the testimony on that subject, and so far as the direct evidence as to the fact is concerned, the boy's testimony is uncorroborated.    He testifies to that state of facts himself, and he is not corroborated directly by any other witness.    He is contradicted directly by the two boys that were on with him, who testify that they heard no brakeman and saw no brakeman swing a stick.    From the testimony of the plaintiff, it is hardly conceivable that this could have happened and the other two boys not know it.    If I understand his testimony correctly, the three were on the car when the brakeman commenced to hollo.    He says, " He holloed at us."    I infer from that that he means that the three were on the car when the brakeman commenced holloing; and if that be true, and he heard it when they were all sitting together, it is not conceivable that the others did not hear it or see it.    Therefore, there

does not appear to be anyway of reconciling the testimony of these three boys. Either this plaintiff is telling us what is not true or the other two are telling what is not true. At least, that is the way it looks to the court, and it is for you to determine which of these two stories is the correct one, because, as I stated before, the plaintiff's case hinges on the fact of whether this brakeman called out to him or not. It is for you to pass upon the credibility of these witnesses. The plaintiff, Joseph Enright, is an interested witness, of course, because upon his testimony will depend his recovery in this case. You pass upon the credibility of the other two witnesses, and in doing so, you take into consideration the testimony which has been offered in evidence to affect their credibility. One of them, I think it is Reardon, the larger of the two boys, has been contradicted by three witnesses. Of course, those three witnesses are the plaintiff, Joseph Enright, and the father and mother of the plaintiff,—in fact, both plaintiffs and the mother; all interested. They have contradicted him directly as to assertions which he made very soon after this accident,—within, I suppose two or three months after this accident happened,—that the brakeman did frighten him off the car. You take that into consideration.

[Another matter has come into the case which you have a a right to consider, as affecting the credibility of these two boys, and that is the fact that an agent for the defendant company paid them money at different times pending the trial of this case. You have heard his explanation of that; and while ordinarily it is a highly improper matter to pay a witness money, it is not improper under certain circumstances, if the services of the witness are wanted, to pay his ordinary expenses. To illustrate what I mean : the testimony of the agent of the defendant company was that the counsel of the defendant company wanted these two boys in his office to make an affidavit. They had a right, of course, to demand their expenses to and from the office, and it was legitimate for him to pay it. If that and similar purposes is all that this money was paid for, then that was a perfectly legitimate transaction. But that is for you to determine. You take the fact into consideration that these boys were paid money at different times pending the trial of this case ; and taking the evidence, you will determine whether it

was a legitimate payment or whether it was a payment for the purpose of influencing their testimony in this case. If it was for the latter, of course, it would affect their credibility.] [2] Of course, if you believe that they were telling the truth, then, no matter how improper the payment might have been, it should not affect the verdict in this case. You only consider that to affect their credibility, as to whether that was paid for the purpose of influencing them and did influence them in their testimony here.

[The plaintiff, Joseph Enright, is further contradicted by the testimony of Robinson, as to an interview that he had with him a few days after the accident, and by Mr. Howells, the superintendent of the West Penn Hospital. Now, it is alleged that at that time, a few days after the accident, the boy was suffering pain; and you take that into consideration, not as suggested by counsel for plaintiffs, because it was an outrage, a hard-hearted act on the part of the agent, because it does not matter how hard-hearted the agent might have been, that cannot affect the truth; but you take into consideration the time following the accident, as to whether the boy was in mental condition or not to tell it at that time. If he was, then no matter how hard-hearted it might have been on the part of the defendant's agent, if he was in condition to tell the truth and knew what he was saying, then the evidence of Robinson goes to affect his credibility. If he was suffering such pain at that time as to not know what he was talking about or as to affect his knowledge of the subject, then you take that into consideration, as to whether this interview does affect his credibility or not, and to what extent.] [3] All these things you consider, gentlemen, in determining the question as to which of these two stories you believe; because as I have said, and I am still of that opinion, you have to find that either this plaintiff, Joseph Enright, is telling the truth and that the other two boys are wilfully telling a falsehood, or else that he is telling a falsehood and the other boys are telling the truth.

When you come to consider the case of this father, you have one other matter to consider besides the question as to whether this accident was occasioned by the employees of this defendant company, and that is as to whether the parents of this child were negligent in permitting him to run into places of danger

such as testified to in this case. If you believe that they did not take proper care of him, and allowed him to run as he pleased and get into places of danger, then the father cannot recover. To illustrate what I mean: if this boy had been of mature years, he could not recover in this case, because it would be contributory negligence on his part to get upon a train such as this was, even if the train was standing still, and much more so if the train was moving. In his own case, it is only because he was a boy that he is entitled to recover. [Now, it is the duty of the parents to take proper care of their children and use all reasonable diligence to see that they do not get into places of danger. This boy had been, I think he said two hours and a half playing down near the tracks of this railroad. If you think that that was proper care for a parent to exercise over a child of this age, then, if you believe the accident happened as narrated by the boy, the father would be entitled to recover. If you believe that this was not proper care to exercise by a parent over a child, then he would be guilty of contributory negligence and would not be entitled to recover.] [1]

Verdict and judgment for Joseph Enright for $3,000, and for Patrick Enright for $500. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Johns McCleave*, for appellant.—The father was guilty of contributory negligence: Cauley v. P. C. & St. L. Ry. Co., 95 Pa. 398; Penna. Co. v. James, 81* Pa. 194; Westerberg v. K. C. & K. R. Co., 142 Pa. 471; Pittsburg, etc., Ry. Co. v. Pearson, 72 Pa. 169; Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321; Evers v. Philadelphia Traction Co., 176 Pa. 376; Glassey v. Hestonville, M. & F. Pass. Ry. Co., 57 Pa. 172; Johnson v. Reading City Pass. Ry. Co., 160 Pa. 647.

*J. S. Ferguson*, with him *E. G. Ferguson*, *Horace J. Miller* and *T. T. Donehoo*, for appellees.—Suffering a boy eight years old to be abroad alone is not necessarily negligence: Lovett v. Salem R. R. Co., 91 Mass. 557.

OPINION BY MR. JUSTICE BROWN, January 5, 1903:
When this case was here before, 198 Pa. 166, on appeal from

the refusal to take off a compulsory nonsuit, we held, in reversing the court below, that under the facts proven, the defendant company was negligent.   On this appeal, the right of Joseph Enright, the minor, to recover is not questioned, if his testimony is to be believed; but we are asked to reverse the judgment in favor of the father on the ground of his contributory negligence and to send the case back for another trial on the boy's claim for alleged errors in the charge of the trial judge.

The contributory negligence of the father, which appellant insists is a bar to his right to recover, is his carelessness in allowing his boy to be out on the street alone and to stroll away from home a square and a half, with young companions, down along the railroad tracks, where they jumped on a moving train and the boy was hurt in getting off.   He was ten years and six or eight months old on the day of the accident, which we judicially notice was Sunday.   It was a day of rest in the late summer or very early fall, when the temptation to be out of doors is great.   With all ordinary business suspended and the dangers incident to children on the street greatly diminished, the solicitude of the most anxious parents for the welfare of their little ones, longing to be out, would be naturally relaxed on the Sabbath, and, what might be negligence by them on any other day of the week, might not be on this.   But, without regard to the day, ought the court below to have declared the father guilty of contributory negligence as a matter of law? The boy was not a little, prattling child of so tender years that his very presence on the street away from home, unattended by anyone, was in itself evidence of the carelessness and neglect of his parents.   He was nearly eleven years old—soon to reach the age of discretion.   Many no older than he earn their own living and help to support needy or helpless parents. In the healthful development of children thousands of the age of this boy are daily seen on the streets of towns and cities, squares away from home and unattended, without a thought in the mind of the passerby that their parents are negligent; and even if, as here, they do stroll or wander into places of danger, and are hurt in their search for amusement, the law could not declare the parents careless without offending its own humanity. What was said under the facts in Philadelphia & Reading

Railroad Co. v. Long, 75 Pa. 257, may be aptly repeated here : " The doctrine which imputes negligence to a parent in such a case is repulsive to our natural instincts, and repugnant to the condition of that class of persons who have to maintain life by daily toil." In his charge to the jury the learned trial judge said : " Now, it is the duty of parents to take proper care of their children and use all reasonable diligence to see that they do not get into places of danger ; " and he submitted it to them to determine whether, under the facts in the case, the father had been negligent. To more than this the appellant was not entitled.

The second assignment relates to what the court said in its charge about money that had been paid by an agent of the defendant company to the two boys who were on the car with Enright. McCarthy, one of them, testified that the agent had called to see him and given him money three or four times, and that it had been given to him voluntarily, as he had not asked for it. The other boy, Reardon, said the agent had given him money two or three times. In explanation, the agent testified : " I gave them fifty or sixty cents, and maybe seventy-five cents or a dollar, I forget the amounts, to come into town to see the attorney once, and attend the trial once, and to get them their dinners ; once they came in to make an affidavit to their two statements ; I gave them money for their fare and also gave them money for their dinners ; I also paid their fare and paid for their dinners ; this money was for that ; they were poor, they said, and did not have anything ; that is the reason the money was given." These two boys were subpœnaed by the plaintiff as well as by the defendant at the first trial. When they came into court they were in charge of Robinson, the agent who had paid them the money, and Reardon testified that, when the attorneys for the plaintiff tried to speak to them, they were ordered not to do so by the agent who had them in charge. Robinson admits this in his testimony. On the second trial, when counsel for the plaintiff attempted to speak to them in court, he was stopped by the railroad detective and not allowed to have any communication with them. .Counsel for the appellee admits that he commented on these matters in his address to the jury ; and it was not improper for him to do so, for the jury could have fairly concluded that the payments

were made for a purpose which was effected. In commenting upon this feature of the case, the court left it to them to determine whether the payments had been legitimately made, or for the purpose of influencing the testimony of the boys. The portion of the charge objected to is: "Another matter has come into the case which you have a right to consider, as affecting the credibility of these two boys, and that is the fact that an agent for the defendant company paid them money at different times pending the trial of this case. You have heard his explanation of that; and while ordinarily it is a highly improper matter to pay a witness money, it is not improper, under certain circumstances, if the services of the witness are wanted, to pay his ordinary expenses. To illustrate what I mean: The testimony of the agent of the defendant company was that the counsel of the defendant company wanted these two boys in his office to make an affidavit. They had a right, of course, to demand their expenses to and from the office; and it was legitimate for him to pay it. If that and similar purposes is all that this money was paid for, then that was a perfectly legitimate transaction. But that is for you to determine. You take the fact into consideration that these boys were paid money at different times pending the trial of this case; and taking the evidence, you will determine whether it was a legitimate payment or whether it was a payment for the purpose of influencing their testimony in this case. If it was for the latter, of course, it would affect their credibility." In this there was no error.

The statement of the occurrence given by the injured boy, when in the hospital, to Robinson, the agent already referred to, differed very materially, according to that witness and Howell, the superintendent of the institution, from his testimony on the trial. When he was interviewed in the hospital, on the second day after the accident, as nearly as Robinson could fix the date, he was lying on a cot, covered up; one leg had been amputated, the other was badly lacerated, his head was cut open, and it is safe to assume he was in great suffering. Under these conditions, the representative of the company called upon this boy to learn from him his version of the accident. Older heads might not have been able to remember, and no just complaint can be made of that portion of the charge in which,

after directing attention to the inconsistent statements alleged to have been made by the boy, the jury were told : " If he was suffering such pain at that time as to not know what he was talking about or as to affect his knowledge of the subject, then you take that into consideration as to whether this interview does affect his credibility or not and to what extent."

The assignments are dismissed and the judgments are affirmed.