## Henderson, Appellant, *v.* Continental Refining Company.

*Negligence—Infant—Dangerous machine—Vacant lot—Permissive use of lot—Playground for children—Parents' duty.*

A corporation owned a vacant lot which the children of the neighborhood had been permitted to use as a playground. The lot was level with a road and was not fenced in. On the lot were two houses occupied by tenants of the company. The side door and porch of one house opened directly upon the lot, and opposite to this door was a gate entering the yard of another house. Between the door and the gate there had been a path. Near the path the company placed pumping machinery with revolving cogwheels. A boy seven years old went to call upon a friend at the house where the gate opened into the lot. Not finding his friend at home he passed through the gate into the lot, and in some way not explained was caught in the pumping machinery and killed. The evidence showed that the machinery was not inclosed or

guarded, and that it was dangerous for anyone to come in contact with it while in motion. *Held,* in an action by the parents of the boy against the corporation owning the lot, that the case was for the jury, and that it was error to enter a nonsuit.

Parents cannot be held guilty of contributory negligence, as a matter of law, merely because they allow a seven year old boy to go around by himself upon the streets in the vicinity of his home, or to visit a neighbor's house. At most the question would be for the jury.

Argued Oct. 25, 1907. Appeal, No. 156, Oct. T., 1906, by plaintiffs, from order of C. P. Venango Co., Nov. T., 1903, No. 34, refusing to take off nonsuit in case of Harry A. Henderson and Nancy Henderson, his wife, v. Continental Refining Company, Limited. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiffs' son. Before CRISWELL, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Peter M. Speer,* with him *John M. McGill,* for appellants. —Where one has reason to apprehend danger from the peculiar situation of his property and openness to accident, the rule that where no duty is owed no liability will arise will not prevail; but the question of liability must be submitted to the jury, to be determined upon all the facts of the case : Schilling v. Abernethy, 112 Pa. 437 ; Rachmel v. Clark, 205 Pa. 314 ; Duffy v. Sable Iron Works, 210 Pa. 326 ; Gramlich v. Wurst, 86 Pa. 74.

*William J. Breene,* with him *Edmond C. Breene,* for appellees.—The appellee was not obliged to foresee under the circumstances of the case that the decedent might attempt to ride upon the power while in motion and be injured in so doing : Hestonville Passenger Ry. Co. v. Connell, 88 Pa. 520 ; Gramlich v. Wurst, 86 Pa. 74 ; Gillespie v. McGowan, 100 Pa.

114; Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321; Rodgers v. Lees, 140 Pa. 475; Horstick v. Dunkle, 145 Pa. 220; Feehan v. Dobson, 10 Pa. Superior Ct. 6; Widger v. Phila., 217 Pa. 161; Daniels v. R. R. Co., 154 Mass. 349 (28 N. E. Repr. 283); McEachern v. R. R. Co., 150 Mass. 515 (23 N. E. Repr. 231); Frost v. R. R. Co., 54 N. H. 220 (9 Atl. Repr. 790).

It cannot be said that legally the decedent was on the premises as an invitee of the defendant company. Granting for illustration only, all of the contention of the appellants in this connection, the decedent was upon the premises by sufferance and only as a mere licensee: Turess v. R. R. Co., 71 N. J. L. 314 (40 Atl. Repr. 614); Beehler v. Daniels, 29 Atl. Repr. 6; Plummer v. Dill, 31 N. E. Repr. 128; Moffat v. Kenney, 54 N. E. Repr. 850; Alabama G. S. Ry. Co. v. Hall, 17 So. Repr. 176.

A parent owes a reasonable duty of protection to his children, and cannot cast the whole of that duty upon strangers. If he permits them when of tender years, to wander off in places of known danger, and by reason thereof an accident occurs to them, he has no just claim to make others bear the consequences of his own neglect: Westerberg v. Ry. Co., 142 Pa. 471; Glassey v. Ry. Co., 57 Pa. 172; Del Rossi v. Cooney, 208 Pa. 233.

OPINION BY MR. JUSTICE POTTER, January 6, 1908:

The only question presented for review by this appeal is whether the learned trial judge erred in refusing to take off the judgment of compulsory nonsuit entered by him at the close of the plaintiffs' evidence, upon the trial of this case. The injury for which damages are claimed was the death of a boy seven years of age, caused, as is alleged, by the negligence of the defendant company in failing to cover or guard a piece of pumping machinery, located upon a vacant lot adjacent to the highway. It is apparent from the description of the pumping machinery, with its revolving cogwheels and attachments, that it would be dangerous for anyone to come in contact with it while in motion, and there is testimony in the case that it is customary to guard or cover similar machines. The defendant company owns and operates an oil refinery,

near Oil City, on the westerly side of a public road. It also owns land on the easterly side of the same road, upon which are located two houses belonging to the company and occupied by its tenants. These houses front upon the road, and are separated by vacant ground some forty or fifty feet in width, also belonging to the defendant. The side door and porch of the southerly house opens directly upon the vacant lot, and opposite to it is a gate entering the yard of the northerly house. Between this door and gate there was formerly a path which was used to pass from one house to the other. The vacant lot extended westwardly to the road and eastwardly to Oil Creek. It was level with the road and was not fenced in. It appears from the testimony that the lot was used for a common, and the children of the neighborhood had used it as a playground. Plaintiffs, who are the parents of the boy who was killed, at one time lived in the southerly house, but moved elsewhere some time before the accident. About July 1, 1903, the defendant company placed upon this vacant lot the pumping machinery in question, and located it at a point midway between the two houses, and on the path connecting them, or very close to it. Between the road and the pump, about twenty or twenty-five feet from the latter, was a gas engine used to operate it, and connected with it by a belt.

On July 29, 1903, about four o'clock in the afternoon, the seven-year old son of plaintiffs went to the house north of the lot where the pumping machinery, generally called the power, was located as described, seeking a playmate who lived there. He went in the front way from the road, saw his friend's father, who told him his son was not at home, and then passed out by the side gate into the lot. He was seen a few minutes later standing a few feet from the power, looking at it. In some way which is unexplained, as no one saw him at the moment of the accident, he was caught in the machinery, carried around and thrown down upon the ground. One of his legs was so badly injured as to make amputation necessary, and he died the same night from the shock and loss of blood.

The trial judge seems to have been impressed with the idea that the boy climbed upon the machinery, for the sake of having a ride upon the revolving power, but we do not find anything in the evidence to indicate that such was the fact. At most

it was but an inference, and as such it was for the jury to draw. No one saw the boy climb upon the machine. Just before the accident he was seen standing near the power; when next seen he was falling to the ground. How he became involved in the machinery, whether by climbing upon it or by standing too near, is only a matter of inference. The age of the boy precluded his being held guilty of contributory negligence as matter of law by the court. Whether or not he exercised, under the circumstances, the degree of care commensurate with his age, was for the jury.

We do not think the facts in this case, bring it within the line of the decisions in which it is held that the landowner owes no duty of protection to those who may be upon the premises. Under the circumstances it can hardly be said that the child was where he had no right to be. The entire tract of land, including the two houses, and the ground between them, belonged to the defendant company. As has already been noted, one of the houses was built with a side door and porch opening directly upon the vacant lot, and from the other house, a gate placed in the fence opened from that side directly into the lot. The door provided upon one side and the gate upon the other, certainly was sufficient to indicate to tenants in the houses, to their families and guests, an implied permission, or invitation, to enter upon and cross the vacant lot. As a matter of fact under this permission it was used for years to such an extent that a path was worn across the lot between the two houses. The lot was also permitted to be used as a playground for the children of the tenants in the houses, and by other children. After permitting this use of the property for several years, the defendant company, according to the testimony, erected this dangerous piece of machinery right upon, or close to, the pathway between the two houses. It did not inclose or guard the machinery, nor did it shut up the door or the gate leading from the houses to the lot. It seems to have done nothing to give notice that the permissive use of its land as a passageway and playground was to be discontinued. Upon the day of the accident, plaintiff's son went to the home of the tenant living in the northern house, upon a lawful errand, to see a member of the family. On leaving, he passed through the side gate onto the lot; the existence of

the gate being apparently an invitation to him to go out in that way. His attention would be naturally attracted to the curious machinery located on or near the path and but a few feet away. A fair inference is, that heedlessly, or without appreciating the danger, the child ventured too near, and was injured. Under these circumstances, he cannot fairly be regarded as a mere trespasser. The lot was really an appurtenance to the two houses, and was a part of the curtilage. It was not only so used by the occupants of the houses, and their visitors, but it was expected that it should be so used, because of the arrangements made to enter upon it from the sides of the houses. The language which counsel for defendant company cite as defining the term "invitation" seems to fit very closely the facts of this case so that the inference may well be drawn that the child "entered the premises because he was led to believe that they were intended to be used by visitors, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the place was adapted and prepared or allowed to be used." In Kay v. Penna. R. R. Co., 65 Pa. 269, Justice AGNEW said: "Duties grow out of circumstances, the authorities tell us, and that which in one case would be an ordinary and proper use of one's rights may, by a change of circumstances, become negligence and a want of due care. . . . If, therefore, an owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce a confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to exercise his rights in view of the circumstances so as not to mislead others to their injury, without a proper warning of his intention to recall his permission."

As to the suggestion that the parents were guilty of contributory negligence, they could not be so held as matter of law, merely because they allowed a seven-year old boy to go around by himself upon the streets in the vicinity of his home, or to visit a neighbor's house. At most the question would be for the jury: Enright v. Pittsburg Junction R. R. Co., 204 Pa. 543. The same may be said as to the contention that the parents were negligent in not warning the boy to keep away

from the machinery. It was not so clear a duty that the court could declare it as a matter of law : Herron v. Pittsburg, 204 Pa. 509.

We are of the opinion that under every aspect of this case, it should have been, under proper instructions, submitted to the jury.

The judgment is reversed with a procedendo.