M. C. FERRELL, ADMINISTRATOR, v. DIXIE COTTON MILLS.

(Filed 23 December, 1911.)

1. Negligence—Dangerous Instrumentalities—Care Required.

Persons and corporations dealing with electricity are held to the highest degree of care in the maintenance and inspection of their wires, through which deadly currents of electricity pass, and of guy or other wires which may come in contact with the live wires, to the menace of human life.

2. Same—Children—Invitation Implied—Trespass.

The defendant permitted a guy wire of its electric pole to become loose from its fastening in the ground and to hang down its pole at an exposed and uninclosed place within a few inches from a naked or uninsulated wire charged with a deadly or high voltage of electricity. This hanging guy wire was attractive to the boys, who would swing on it from the pole and back again, and who would congregate there for the purpose. About eight months after the guy wire became loose, the plaintiff's intestate, his 6-year-old son, while swinging, as indicated, was instantly killed by electricity passing suddenly through the guy wire from contact with a highly charged wire carrying the current: *Held,* the defendant knew or should have known of the dangerous conditions existing, and that children would be attracted to and were accustomed to play with the loose guy wire, and the technical defense that the plaintiff's intestate was a trespasser would be unavailing.

3. Electricity—Poles—Curtilage.

A pole used to support wires charged with electricity to supply a cotton mill plant, situated, without inclosure, where the employees of the mill resided, at or near the corner of an uninclosed garden patch, only a short distance from the home of an employee, is sufficient for an inference that it was within the curtilage of the employee.

4. Negligence—Electricity—Children—Invitation Implied—Warning.

Where the defendant is negligent in permitting a loose guy wire to hang from a pole whereon there were wires carrying a high or deadly voltage of electricity to its plant, left unguarded and uninclosed, and knew or should have known that the small children of the neighborhood were accustomed to swing on the wire, and had permitted this condition to exist for several months, when it could readily have been rendered harmless, the fact that the defendant's watchman had previously told the boys

to stay away from the pole is no defense in an action for damages for the death of one of the boys, 6 years of age, killed by a current of electricity while swinging on the loose guy wire.

5. **Electricity—Dangerous Instrumentalities—Negligence—Location of Poles—Control—Evidence.**

The plaintiff rented from the defendant one of the tenement-houses at its mill used by its employees, and the plaintiff's intestate, his 6-year-old son, was killed while swinging on a loose guy wire from a pole carrying wires charged with a deadly current of electricity, under circumstances tending to show negligence on the defendant's part. There was no evidence tending to show that any one except defendant had charge of this pole, or had authority to remedy any defects in or about it: *Held*, the defendant's liability did not depend on the question as to whether the pole was on or off the premises which it had rented to the plaintiff.

6. **Electricity — Dangerous Instrumentalities — Children—Parents—Contributory Negligence—Questions for Jury.**

When the evidence tends to show that the plaintiff's intestate, his 6-year-old son, was killed through the negligence of the defendant by a deadly current of electricity from its wires on a pole passing into a loose guy wire whereon the intestate was swinging, as children in the neighborhood were accustomed to do, under dangerous conditions which had previously existed for several months, the pole being uninclosed and unguarded near the home of the plaintiff; that the father was away from home at the time, engaged in his business, and the mother was taking care of her household duties, having a family of several children, it will not be held as a matter of law that the alleged negligence of the parents, in permitting their child to play with the wire, barred a recovery of damages for the wrongful death of the intestate.

7. **Instructions—Evidence.**

A prayer for instruction relating to the contributory negligence of the father, unsupported by the evidence, was properly refused.

8. *Electricity — Dangerous Instrumentalities—Negligence—Rule of Prudent Man—Proximate Cause.* ·

The plaintiff's intestate, his 6-year-old son, was killed by receiving a shock from a loose guy wire hanging from defendant's pole situated near his dwelling, under evidence tending to show that the injury was inflicted through the defendant's negligence.

157—34

FERRELL *v.* COTTON MILLS.

A charge held correct, that if the jury found that a reasonably prudent man ordinarily would have permitted the wire to remain in that condition at that place it would not be the negligence of the defendant, and that recovery could not be had if the conditions were not the proximate cause of the death.

APPEAL from *Lyon, J.,* at May Term, 1911, of IREDELL.

This action was brought by the plaintiff to recover damages for the death of his son, which is alleged to have been caused by the negligence of the defendant. The intestate of plaintiff, his 6-year-old son, was killed by an electric shock received from a loose guy wire, suspended from a pole on which was strung the wires supplying defendant with power to run its cotton mill. This pole was on defendant's property and belonged to it. The guy wire was attached to the top of the pole, and fastened at the other end to a piece of timber in the ground. This guy wire was for the purpose of holding the pole in place. The wires—three of them—which carried the current were naked, that is, they were uninsulated except where they were fastened to the cross-arm on the poles. This guy wire was fastened to the pole above the cross-arm and came down between two of the electric wires, passing within some 8 inches of one of them. Some six or eight months prior to the boy's death, the earth had been removed from the place where the guy wire was fastened in the ground, so that it became loose. It was permitted to hang loose against the pole for several months before the injury. The plaintiff, with his family, lived in one of the defendant's dwelling-houses. Two of his children worked in the mill. The house was only a short distance from this pole, only 50 yards or more. Plaintiff testified that the pole was just beyond the corner of his garden patch. The evidence indicates that there were some twenty or more of the mill dwellings; that there were no fences about them, and that people, children and others, were accustomed and were permitted to go about the settlement pretty much as they pleased. This pole stood some 10 feet or more from the railway track, which at that point ran through a cut. There was a path on the side of the cut and between it and the pole. Any one who desired to do so used this path. There is much evidence in the

record that children had been accustomed to play about this
pole, on the railway bank, and they were seen on several occa-
sions playing about it, playing with this loose guy wire, swing-
ing on it out from the pole and back. This fact had been
reported to the agents of the defendant. It was admitted that
the wires on the pole carried a current of 2,200 volts, and the
evidence shows that such a current is highly dangerous and
deadly.

At the close of the testimony the defendant moved to nonsuit
the plaintiff. This motion was overruled, and whether it should
have been granted depends upon the state of the evidence.
Defendant appealed.

*L. C. Caldwell, R. S. Hutchison, Burwell & Cansler, and
Tillett & Guthrie for plaintiff.*
*H. P. Grier and Z. V. Turlington for defendant.*

WALKER, J. The negligence charged against the defendant
is the maintaining by it of a highly dangerous and deadly con-
dition and instrumentality on premises which were uninclosed,
and which were in an attractive place to children, and on which
defendant knew, or by the exercise of reasonable care ought to
have known, that small children were accustomed to play. There
was ample evidence to sustain this allegation. The contention
of the appellant is that the child was a trespasser, to whom
it owed no duty except to refrain from willfully injuring it.
If the injury had been to a person of such mature age that he
could appreciate the nature of his acts, and the dangers attached
to the situation, we would agree with this contention. But
when, as in this case, the injury is suffered by a 6-year-old boy,
under such circumstances and surrounding conditions as the
evidence showed to exist, a different rule of law governs the
conduct and liability of the defendant. What did this 6-year-
old boy know about the dangers of electricity? What could he
possibly have known about the rules of property and the laws
of trespass? Technically, he may have been a trespasser on
defendant's land, but all he knew about it was that it was an
attractive place to play, and that it was where he and the other

little children of the neighborhood were accustomed to play, and had been playing for months past. The defendants knew, or ought to have known, that this pole with the loose guy wire attached to it was an instrument of death, which might become effective to any one who came in contact with it. The defendant also knew, or ought to have known, that the children were in the habit of playing about this pole, and that they were also in the habit of swinging on the loose guy wire. Under these circumstances, the law will not permit the defendant to allege a technical trespass and thereby shield itself from the consequences of its negligence, resulting in the death of the son of the plaintiff. The doctrine of the "turntable cases" was first before this Court in the case of *Kramer v. R. R.,* 127 N. C., 328. There the 9-year-old son of plaintiff was killed by climbing upon a pile of cross-ties negligently stacked by defendant in an unused portion of one of the streets of the town of Marion. The Court held that plaintiff's son was not a trespasser; but it further says: "If he was too young to be bound by any rule as to contributory negligence and had a habit of playing, with other boys, on the cross-ties with the knowledge of defendant, and without the defendant's attempting to prevent such sport or to take precaution against injury to the children, then the defendant was negligent. In such a case the defendant's negligence would not consist in piling the cross-ties in the street, but it would consist in its failure to guard against injury to the children, after it had learned of their habit of playing on the ties, and its failing to provide against their injury."

In *Briscoe v. Power Co.,* 148 N. C., 396, plaintiff was not permitted to recover, as the evidence failed to show that the premises of defendant were especially attractive to children, or that children were accustomed to play there; and also that this rule of law had never been held applicable in the case of a boy 13 years of age. But, in the course of the opinion, *Mr. Justice Connor* states his approval of the rule of law which we think is applicable to the case in hand. On page 411 he says, quoting from 21 A. and E. Enc., 473: "A party's liability to trespassers depends on the former's contemplation of the likelihood

of their presence on the premises and the probability of injury from contact with conditions existing thereon." Immediately following this language, the editor says: "The doctrine that the owner of premises may be liable in negligence to trespassers whose presence on the premises was either known or might reasonably have been anticipated, is well applied in the rule of numerous cases that one who maintains dangerous implements or appliances on uninclosed premises of a nature likely to attract children in play, or permits dangerous conditions to exist thereon, is liable to a child who is so injured, though a trespasser at the time when the injuries were received; and with stronger reason, when the presence of a child trespasser is actually known to a party or when such presence would have been known had reasonable care been exercised." In the case of *Harrington v. Wadesboro,* 153 N. C., 437, plaintiff was permitted to recover for the death of her son, a 17-year-old boy, who was killed by catching hold of a wire which was hanging low over a path used by people in going to a moving-picture show.

The *Harrington case, supra; Haynes v. Gas Co.,* 114 N. C., 203; *Mitchell v. Electric Co.,* 129 N. C., 166, as well as other cases in our reports, lay down the rule that persons and corporations dealing in electricity are held to the highest degree of care in maintenance and inspection, of their wires, poles, etc. This rule is well stated in *Mitchell's case, supra:* "In behalf of human life, and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature, to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition." See *Hicks v. Telegraph Co., ante,* 519.

*Henderson v. Refining Co.,* 68 Atl., 968, presents a state of facts almost exactly similar to the facts in this case. There the 11-year-old son of plaintiff was killed by getting into a gas engine erected on a vacant uninclosed lot by defendant. The lot lay between two dwelling-houses owned by defendant, in one of which the parents of the boy had formerly lived. The lot had been used as a sort of common, and as a playground for the children. There was a path across it. The

Court says: "A fair inference is that heedlessly or without appreciating the danger, the child ventured too near and was injured. Under these circumstances he cannot be regarded as a mere trespasser. The lot was really an appurtenance to the two houses and was a part of the curtilage." As in the above case, we think that from the evidence in this case it is reasonable to infer that this pole was within the curtilage of plaintiff's dwelling. He says that it was right at, or near to, the corner of his uninclosed garden patch, only a short distance from his home. In sustaining a recovery by the plaintiff in *Mattson v. R. R.,* 111 Am. St., 483, it is said: "It (the defendant) failed to take proper care of dynamite brought into this vicinity, and left it exposed upon premises where children had, to the knowledge of its servants, been in the habit of loitering and amusing themselves." In *City of Pekin v. McMahon,* 45 Am. St., 114, an 8-year-old boy was drowned in a gravel pit situated on an uninclosed vacant lot belonging to defendant. The Court says: "The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in a safe condition; for they, being without judgment, and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers, and mere licensees. 2 Shear. and Redf. Neg. (4 Ed.), sec. 705; 4 A. and E., 53, and cases in note. In such case the owner should reasonably anticipate the injury which has happened. 1 Thompson on Neg., 304." *Tacket v. Henderson,* 108 Pac., 151, cites at length the cases of *Mitchell v. Electric Co.* and *Haynes v. Gas Co., supra,* and approves the doctrine there laid down. It is there held: "A person or corporation using wires charged with electricity is bound, while the public is not, not only to know the extent of the dangers arising from them, but to use the very highest degree of care practicable to avoid injury." In *Olsen v. Gill,* 108 Pac., 140, it is said: "Here the appellants, having no apparent use for the dynamite, and knowing of the trespassing proclivities of the boys, heedlessly stored it, a most dangerous agency, where in the exercise of ordinary prudence they should

have anticipated the trespassing boys would really find, be attracted by, and take it. Under such circumstances we cannot hold that the trespassing of the boys should as a matter of law excuse the appellants from liability." The boys above mentioned were 13 and 14 years of age, and the dynamite was stored in an unlocked building on a vacant, uninclosed lot. In *Branson v. Labrot,* 50 Am. Rep., 193, it is held: "Defendants piled lumber, in a large city, on an unfenced lot which the public were accustomed to cross and children to play upon, in a negligent manner, so that it fell upon and killed a young infant who was playing on the lot near it: *Held,* that a recovery was justifiable." In *Brown v. Salt Lake City,* 93 Pac., 570, an 8-year-old boy was drowned in a conduit situated near a schoolhouse. Entrance to the conduit was barred up, but one of the bars had been broken for a year or more, and children had played in and about it for several years, and its condition had been brought to the notice of the city authorities. The Court says: "We are constrained to hold, therefore, that the doctrine of the turntable cases should be applied to all things that are uncommon and are artificially produced, and which are attractive and alluring to children of immature judgment and discretion, and are inherently dangerous, and where it is practical to guard them without serious inconvenience and without great expense to the owner." In *Price v. Water Co.,* 50 Pac., 450, an 11-year-old boy was drowned in defendant's reservoir. The reservoir was fenced, but there was a kind of stile over the fence, and defendant had knowledge that boys played about the reservoir, fishing and indulging in other sports. The Court says: "To maintain upon one's property enticements to the ignorant or unwary is tantamount to an invitation to visit and to inspect and to enjoy, and in such case the obligation to endeavor to protect from the dangers of the seductive instrument or place follows just as though the invitation had been express. . . . It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with meat so that his neighbor's dog attracted by his natural instincts might run into it and be killed, and which

would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life. Such is not law." In *Decker v. Paper Co.*, 27 N. W., 183, a 5-year-old boy was killed while playing on an elevator in defendant's mill. The evidence showed that defendant permitted children and others to go about the premises, and that it had knowledge that children were accustomed to play in this room and on this elevator, and with reference to these facts the Court said: "The elevator in the condition in which defendant maintained it was extremely dangerous as a playground for young children, and the precise manner in which the accident happened is not of serious moment as respects defendant's liability, since it is clear that death resulted from playing about the elevator. . . . Defendant offered evidence tending to show that small boys were forbidden the premises, and, when found, that they were driven away, and it is claimed that defendant performed its full duty in keeping them away. This evidence, in connection with that offered by the plaintiff upon the same subject, presented a question for the jury." In *Franks v. Cotton Oil Co.*, 12 L. R. A. (N. S.), 468, a 10-year-old boy was killed by drowning in a reservoir on defendant's premises. The reservoir was unfenced, and children were accustomed to play about it. The Court says, quoting from Thompson on Neg., sec. 1030: "Although the dangerous thing may not be what is termed an attractive nuisance, that is to say, not have especial attraction for children by reason of their childish instincts, yet where it is so left exposed that they are likely to come into contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them." Again, quoting from Thompson Neg., sec. 1026: "One doctrine under this head is that if a child (technically) trespasses on the premises of defendant, and is injured in consequence of something that

befalls him while so trespassing, he cannot recover damages unless the injury was wantonly inflicted, or was due to the recklessly careless conduct of the defendant. This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts property above humanity, leaves entirely out of view the tender years and infirmity of understanding of the child—indeed, his inability to be a trespasser, in sound legal theory—and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty toward him which they would not owe, under the same circumstances, toward an adult." See, also, *Bridger v. R. R.,* 25 S. C., 24; *R. R. v. Stout,* 38 Law Ed., 434; *Townsend v. Wathen,* 9 East., 277; Thompson Neg., secs. 1024-1030; 2 Wood Railway Law, sec. 321; Cooley on Torts, p. 634; Bishop Noncontract Law, sec. 854; 7 A. and E. Enc., 403; 1 Street's Foundation of Legal Liability, p. 160; *Pekin v. McMahon,* 45 Am. St., 114; *Biggs v. Wire Co.,* 56 Pac., 4; *Dobbins v. R. R.,* 41 S. W., 62; *Kopplekom v. Cement Co.,* 64 Pac., 1047; *Powers v. Harlow,* 19 N. W., 257.

In *Snare v. Friedman,* 169 Fed., 1, it is said: "We think in reason and in consonance with the legal principles by which the duty of individuals to protect others from dangers that may result from the use of their own property is determined, and by which they are held responsible for their negligent acts in that regard, this defendant owed a duty to children of tender years who to its knowledge were accustomed to play on the public streets in the vicinity of these piles of beams, and also to play and sit thereon, to use due care under the circumstances to prevent the piles from being in such an unstable condition as would be likely to cause injury to such of these children as might come in contact therewith."

*Pierce v. Leyden* (C. C. A.), 157 Fed., 552, holds: "Defendant maintained a shed in a railroad yard of about two acres near a schoolhouse in a city, in which he kept open barrels of oil. During the daytime the shed was left unlocked, and for several months children living in the vicinity who played in the yard had been in the habit of stealing oil from the barrels

and making fires with it in the yard, which fact was known to defendant's watchman. On one such occasion, plaintiff, who was an infant, was burned and injured. Held, that defendant was chargeable with notice of such practice of the children, from its long continuance and the knowledge of its watchman, and that the question of its keeping the place in such condition in view of the danger of their injury therefrom was for the jury."

In *Akin v. Bradley,* 92 Pac., 903, defendant had thrown some dynamite caps on a vacant lot in rear of its place of business. A path ran through this vacant lot, and school children used the patch. Plaintiff was a boy of 11 years of age. The Court said: "We think that when the respondent left these dangerous explosives by the wayside, where it knew that children, naturally attracted by such things, were constantly passing and repassing and playing therewith, it must be held to have known that such children were liable to cause some of said caps to explode in a manner likely to cause them serious injury, and that the explosion of such a cap by a dry battery in the manner shown herein did not constitute an intervening cause that should relieve respondent from liability." In *Stollery v. R. R.,* 90 N. E., 709, a boy of 10 years was killed, and his body found beside a conveyor operated by defendant on a vacant lot in a city. Held: "Under the decisions of this State, unguarded premises supplied with dangerous attractions to children are regarded as holding out an implied invitation to them, which will make the owner of the premises liable for injuries to them, even though the children be technically trespassers." This case also holds: "The rule of law is, as already stated, that the proof of negligence on the part of the appellee's intestate, as well as all the other elements of the action charged in the declaration, may be established by circumstantial evidence." The principles of the law of negligence laid down in the foregoing cases, as well as in others too numerous to cite, is both just and humane, and under the authority of these cases the court committed no error in submitting the facts in the case to the jury for their decision.

Appellant's fifth exception is to the court's refusal to charge that the defendant was not guilty of negligence, in that its watchman, the witness W. D. Plyler, had told the children to stay away from this pole. Considering the well-known propensity of children of the age of plaintiff's intestate and his playmates to desire to do what they are forbidden, the watchman's warning was hardly more than an invitation. The snip of a pair of wire cutters was all that was necessary to render this death-trap perfectly harmless. · The defendant having negligently failed to perform this insignificant act, and thereby caused the death of this 6-year-old boy, now asks the court to excuse its negligence by charging the jury that it is not liable, because its watchman told those boys to stay away from this pole. This, we think, is hardly short of trifling with human life. In the excerpt already quoted from *Decker v. Paper Co., supra,* the Court, in speaking to this very question, says: "Defendant offered evidence tending to show that small boys were forbidden the premises, and, when found, that they were driven away, and it is claimed that defendant performed its full duty in keeping them away. This evidence, in connection with that offered by the plaintiff upon the same subject, presented a question for the jury." We think that this disposes of appellant's fifth exception.

Appellant's sixth exception is equally without merit. The defendant's liability in this case is in no wise dependent on the question as to whether the pole was on or off of the premises which it had rented to plaintiff, father of the dead boy. In either event, the pole was not rented to the plaintiff. Nor would it make any difference if it had been, except that it may have rendered the question of the negligence of defendant more positive and clear. *Turner v. Power Co.,* 154 N. C., 131; *Haynes v. Gas. Co., supra.* There was no evidence tending to show that any one except defendant had charge of this pole, or had any authority to remedy any defects in or about it. The defendant, therefore, was responsible for its dangerous and deadly condition.

Appellant's seventh exception is to the refusal of the court to charge the jury that plaintiff's cause of action was barred

by his contributory negligence. Under the facts disclosed by the evidence in this case, the plaintiff and his wife were not guilty of contributory negligence in permitting their 6-year-old boy go out into the yard to play. In *Day v. Power Co.,* 117 S. W., 81, plaintiff's 6-year-old boy was killed by contact with a live wire which was strung near the end of a roof; plaintiff lived on the third story of a building, and this roof was used as a kind of back yard. As to the mother's contributory negligence, the Court says: "There is no sufficient ground in the facts before us for declaring the mother of the child guilty in law of negligence. Under the facts disclosed, the characterization of her conduct was an issue for the jury to solve. There is no merit in the suggestion that the child, only 6 years old, was guilty of contributory negligence." In *Henderson v. Refining Co., supra* (68 Atl., 968), the Court says: "As to the suggestion that the parents were guilty of contributory negligence, they could not be so held as a matter of law, merely because they allowed a 7-year-old boy to go around by himself upon the streets in the vicinity of his home, or to visit a neighbor's house. At most, the question would be for the jury. *Enright v. R. R.,* 54 Atl., 317. The same may be said as to the contention that the parents were negligent in not warning the boy to keep away from the machinery. It was not so clear a duty that the court could declare it as a matter of law." *Enright v. R. R.,* 54 Atl., 317, holding a father not guilty of contributory negligence in permitting an 11-year-old son to stroll along railway tracks one and one-half blocks away from home, the Court says: "The doctrine which imputes negligence to a parent in such a case is repulsive to our natural instincts and repugnant to the condition of that class of persons who have to maintain life by daily toil." In *Colorado Springs Electric Co. v. Soper,* 88 Pac., 161, twins 5 years of age were permitted to play in the grounds of a nearby public institution for deaf and dumb; a passing teamster allowed them to ride with him some two blocks away. One of the children, after being put down, took hold of a piece of barb wire lying in the grass, the other end of which was attached to an electric light pole and in contact with electric wires; the child was injured. In speaking to the question of the contribu-

tory negligence on the part of the child's parents, the Court says: "They were away from the traveled portion of the street, safe and secure from all dangerous things rightfully on the street. The barbed wire charged with electricity had no right to be there. If parents are negligent in permitting children to play out of doors, on public grounds in the daytime, unattended by the parents themselves or others, then, in the majority of cases, it will be necessary to go out of the business of raising or attempting to raise children, because parents cannot be with children at all hours of the day; neither is it practical to employ others to be with them to guard them against unseen dangers." In *Compty v. Starke,* 109 N. W., 650, the Court says: "Upon the issue of contributory negligence of plaintiff's mother, the evidence tends to show that she lives in a house something more than a block and a half from the place of injury, and around two street corners; that she is a woman who earns her own living as a nurse, and had the care of the housekeeping for her family, consisting of her mother, an adult brother, herself, and three children; that she had never known the plaintiff to go where the pile driver was at work; that on the day in question her brother was sick in bed, and she was engaged in her Saturday house-cleaning; that she gave plaintiff his lunch in the kitchen, which had a door leading into the back yard which was not locked; that after giving him his lunch, she turned to her work in another room and was out of sight only ten or fifteen minutes when she learned of his injury. . . . We think that the ordinary mother of a family, under these circumstances, would be very much surprised to hear that she had been guilty of negligence in the care of an approximately 3-year-old child. Certainly the fact of such negligence is not clear enough to be declared so as a matter of law." In *Tecker v. R. R.,* 111 Pac., 791, a boy 6½ years of age went to the postoffice with his 10-year-old sister; she went in and got the mail, and when she came out the boy had gone into the street, and had been run over and killed by one of defendant's cars. The Court says: "Nor can it be said as matter of law that the parents of a child are negligent in permitting him to go upon the streets in the care of another child of sufficient age to appre-

ciate and avoid danger, or other competent custodian. In such. cases the question of negligence should be submitted to the jury. 29 Cyc., 558. The parent is only required to exercise ordinary care in watching and controlling the child. 29 Cyc., 556; *Cameron v. Duluth Co.,* 102 N. W., 208." In *Sexton v. R. R.,* 60 Atl., 1022, a boy 6½ years of age was injured. The Court says: "The father of the boy was not precluded from recovering because he permitted his son to go upon the streets in a business part of the city unattended." It appeared in *Gunn v. R. R.,* 36 L. R. A., 575, that two boys, 5 and 6 years of age, were run over and killed by a train of defendant. They lived 300 to 400 yards from the railroad. In speaking to the question of the contributory negligence of the mother, the Court says: "The mother sent them that morning to turn the cows up the road, and come back by the corn lot and garden—a different direction from the trestle, I understand. They could not pen or imprison their children from light and air and exercise and play. They could not always keep unfailing watch upon them." The evidence in this case shows that the father was away from home from early in the morning until late at night, earning a living for himself and family; that the mother was at home taking care of her household duties, which. the presence of several children must have rendered both numerous and exacting. Under such circumstances, surely it cannot be held as matter of law that these parents were negligent in permitting their 6-year-old boy to go out in the yard to play, without constantly watching him. If such a rule should be adopted, a large majority of the mothers would be forced to keep their little children in the house, or else be responsible for any injury suffered by them at the hands of others.

As to the eighth exception, upon the question of contributory negligence, there is no evidence that the plaintiff knew of the condition of the pole and loose guy wire till August. The same may be said as to the contention that the parents were negligent in not warning the boy to keep away from the wire. It was not so clear a duty that the court could declare it as a matter of law.

The ninth exception is to the court's definition of negligence. This exception is without merit, particularly as the court charged the jury as follows: "But if you find a reasonably prudent man ordinarily would have permitted that wire to remain as it was in the place as it was, detached from the ground, then it would not be negligent in the company in having it in that condition; or if you should find that it was not the proximate cause of the plaintiff's intestate's death, why you should answer the first issue No." *Hicks v. Telegraph Co., ante,* 519.

What has been said in regard to the preceding assignments of error, together with the authorities set out, and the principles stated, dispose of the other exceptions. Those facts of this case which are uncontested present a clear case of negligence, the jury having found against the defendant's contention, under the charge of the court, which gave to it the benefit of every principle of law to which it was fairly entitled. At very small expense, the defendant, with notice of the dangerous situation, could by the exercise of the slightest care have prevented this accident, and the wonder is that it did not at once take steps to do so. It may be that the courts, in view of so many injuries from this deadly agency, which without proper care is a constant menace to the public, will have to suggest that companies who make use of it in their business must either convey it by wires laid underground or so safeguard their wires as to remove this ever-increasing danger to those who, in their ordinary avocations, must come in close proximity to this subtle, dangerous, and oftentimes fatal current. It is no injustice or hardship to the defendant that we hold it liable under the conceded facts of this case.

No error.