LUTHER RAGAN, by His Next Friend, v. DURHAM TRACTION
COMPANY et als.

(Filed 17 November, 1915.)

**Electricity—Dangerous Instrumentalities—Inspection of Wires—Negligence
—Evidence—Questions for Jury.**

A corporation using electricity for lighting and power purposes, with
its wires running along or above the streets of a town, are held to a
high degree of care in the supervision and maintenance of its wires for
the protection of the public from the danger of its use; and where, in
an action to recover damages against such corporation, the evidence
tends to show that a chain hanging down along a post, used in manipu-
lating its arc street lamps, came within reach of children twelve years
of age, and at the time in question had become so charged with electricity
as to shock and seriously injure a boy fourteen years of age who caught
hold of a ring at the lower end thereof; that this chain was not insu-
lated or provided with the usual block arranged to intercept the cur-
rent: *Held*, sufficient upon the question of the defendant's actionable
negligence in permitting the conditions to exist. *Parker v. Electric Co.*,
169 N. C., 68, cited and distinguished.

APPEAL by defendant from *Cooke, J.*, at January Term, 1915, of
DURHAM.

Civil action brought to recover damages for personal injury. His
Honor at the close of the evidence sustained a motion to nonsuit, from
which judgment the defendants appealed.

It is admitted upon the argument in the Supreme Court that the
motion to nonsuit as to the defendant Interstate Telephone and Tele-
graph Company was properly allowed, and as to that defendant the
judgment of nonsuit is affirmed.

*Manning, Everett & Kitchin for plaintiff.*
*Bryant & Brogden for defendant Traction Company.*
*Fuller & Reade for defendant Interstate Telephone Company.*

BROWN, J. The testimony set out in the record in this case tends to
prove that the defendant, the Durham Traction Company, operates the
street car line in the city of Durham, and in addition thereto supplies
electric current for lighting the streets of Durham, as well as for private
purposes. The street cars are operated by overhead trolleys suspended in
the usual way from wires running on poles on either side of the street.
The streets are lighted by arc lights suspended over the streets and fed
from wires that run from the same poles.

In order to repair the arc lights and replace the carbons therein, the
lights are raised and lowered by a metal chain with a ring at the end,
which hangs down the poles, and these poles are placed on the edge of the
sidewalk in reach of boys no larger than a twelve-year-old boy. In
some of the chains there is a wooden link or block. This wooden block

serves to intercept the current of electricity that may charge the chain. The electric wires feeding the trolley for the street cars and supplying the current for electric lights run on the same poles.

On Sunday morning, 19 January, 1913, the plaintiff was injured on Angier Avenue, a street lighted by the defendant, by coming in contact with a chain used in lowering and raising the arc lights. The evidence shows that the plaintiff, a boy of fourteen years of age, with a small companion, saw two or three boys standing by the pole, taking hold of the ring in the chain used for lowering and raising the arc lamp. The plaintiff imitated the example of the other boys and took hold of the chain, and at the same time the street car was approaching, when the plaintiff received a severe shock, causing the injury complained of. His companion testified that when the plaintiff took hold of the chain he tried to pull him loose and the electricity ran up his arm. Another witness testifies that when he first saw the plaintiff he was hanging in the ring of the chain apparently dead. There is other testimony tending to prove that he suffered a very severe electric shock.

The evidence also tends to prove that this chain hangs down the pole to such a distance that the ring at the end of it is within easy reach of the average sized boy.

We think his Honor erred in sustaining the motion to nonsuit as to the Traction Company. The case falls within the principle laid down in *Benton v. Public Service Corporation,* 165 N. C., 354, and in *Ferrall v. Cotton Mills,* 157 N. C., 528.

In the *Burton case* the Court said: "It is well settled by the decisions of this and other courts that those who deal in electricity and furnish it for use are held to the highest degree of care in the maintenance and inspection of the wires through which the current passes." In that case the boy was killed by coming in contact with an uninsulated wire extending through the branches of a tree up which he had climbed. In this case the plaintiff was injured by taking hold of a chain hanging down a pole on the sidewalk. The chain ought not to have been charged with electricity; it was evidence of negligence, certainly in the absence of any explanation by the defendant, that a chain hanging down the side of a pole on a public sidewalk within reach of children twelve years of age should be charged with such a current of electricity as to produce the effect it did upon the plaintiff. Such is clearly the doctrine of *Hanes v. Gas Co.,* 114 N. C., 203, wherein it is held:

"It is the duty of a corporation, or others using the streets of a city by permission of the authorities for purposes of gain, to so conduct their business as not to injure persons passing along such streets, and to keep the highways occupied by their apparatus in substantially the same condition as to convenience and safety as they were in before such occupancy."

It is further said in that case that the "utmost degree of care in the construction, inspection and repair of wires and poles is required of those who are allowed to place above the streets of a city wires charged, or likely to be charged, with the deadly current of electricity, so that travelers along the highways may not be injured by defective appliances." *Mitchell v. Electric Co.,* 129 N. C., 166; *Hicks v. Telephone Co.,* 157 N. C., 519; *Harrington v. Wadesboro,* 153 N. C., 437; *Shaw v. Public Service Corp.,* 84 S. E. R., 1010.

The case of *Parker v. Electric Ry. Co.,* 169 N. C., 68, is easily distinguishable from the present case. In that case the evidence proved that the feed wire ran under a bridge maintained over a cut between the city of Charlotte and the village of Hoskins. The cars of the defendant ran underneath the bridge, and under it are its trolley wires and feed wires. The feed wire is about twelve inches below and underneath the bridge. The bridge was floored and was used to carry traffic. The Court said: "It would seem that the defendant in this case had exercised every possible care in the disposition of its wires and had no reason to expect that a thirteen-year-old boy would lie down on the bridge and endeavor to touch them," and so the Court distinguished that case from the *Burton case.* The nonsuit was sustained (1) because the *evidence* showed that the defendant *had exercised every possible care in the disposition of its wires;* (2) because it had no reason to expect that a boy would lie down on the bridge and endeavor to touch the wires.

In the present case the defendant had permitted a chain, which might be charged with electricity, and which on the occasion of the injury was actually charged with electricity, to hang down a pole within easy reach of children on the public sidewalks. The place where the chain was hanging down was such a place as one might reasonably expect it probable that passers-by might come in contact with it. It was uncovered and not even a wooden block to intercept the electric current.

The judgment of nonsuit is set aside as to the Durham Traction Company and a new trial granted.

Reversed.