# Ferry, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Master and servant—Evidence—Dangerous appliance— Elevators.*

1. In negligence cases to recover damages for death though there must, of course, be affirmative proof of negligence before recovery can be had, it is not always essential that there should be an eyewitness of the occurrence. The proof may be furnished by the circumstances themselves. The test is whether they are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant.

2. In an action against an employer to recover damages for the death of a workman killed by an elevator in the place of employment, the case is for the jury where the evidence tends to show that the elevator was not equipped with warning signals, although defendant had been warned by the city inspector to supply them, that it was permitted to work by electricity quietly up and down in a space not guarded from access, where workmen were at liberty to walk or stand in the use of the floor, and apparently directly in the line of their approach to an opening or doorway leading to another portion of the building, that the decedent was found in this space, and at the doorway, crushed by the elevator, and that experts testified that the elevator was dangerous, and "a trap."

Argued March 28, 1911. Appeal, No. 350, Jan. T., 1910, by plaintiff, from judgment of C. P. No. 1, Phila. County, June T., 1907, No. 2,297, refusing to take off nonsuit in case of Catharine Ferry v. Philadelphia Rapid

Transit Company. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for death. Before BRÉGY, J.

The facts appear in the opinion of the Supreme Court.

The court below entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Michael J. Ryan*, for appellant.—The jury fairly and legally could have inferred from the facts in evidence that the proximate cause of Ferry's death was the lack of an inclosure about the elevator and of an automatic device to give warning when the elevator platform was descending: Tucker v. Pittsburg, etc., Ry. Co., 227 Pa. 66; McGuigan v. Beatty, 186 Pa. 329; Cunningham v. Frey, 225 Pa. 456; Millum v. Coal Co., 225 Pa. 214; Scranton v. Dean, 2 W. N. C. 467; Allen v. Willard, 57 Pa. 374; Lehner v. Rys. Co., 223 Pa. 208; Bucklin v. Davidson, 155 Pa. 362.

The plaintiff was not exposing himself to such an obvious danger as would entitle the defendant to have the case taken from the jury: Coolbroth v. R. R. Co., 209 Pa. 433; Kuntz v. New York, etc., Ry. Co., 206 Pa. 162; Barthelmas v. Ry. Co., 225 Pa. 597; Trexler v. R. R. Co., 28 Pa. Superior Ct. 198; Esher v. Mining Co., 28 Pa. Superior Ct. 387; McKee v. Steel Co., 213 Pa. 333; Raymer v. Standard Steel Works, 216 Pa. 101; Studebaker v. Shelby Tube Co., 226 Pa. 239; McGeehan v. Hughes, 223 Pa. 524.

*Thomas Leaming*, with him *William M. Stewart, Jr.*, for appellee.—The plaintiff failed to show any negligence on the part of the defendant company which caused the accident: Mixter v. Coal Co., 152 Pa. 395; Titus v. R. R. Co., 136 Pa. 618; Jones v. Scranton Coal Co., 211

Pa. 577; McGinnis v. Kerr, 204 Pa. 615; Allen v. Kingston Coal Co., 212 Pa. 54; Stringert v. Ross Twp., 179 Pa. 614; Kelly v.. Union Traction Co., 211 Pa. 456; Price v. R. R. Co., 202 Pa. 176; Ott v. Boggs, 219 Pa. 614.

The plaintiff failed to show a case clear of contributory negligence: McGinnis v. Kerr, 204 Pa. 615; McDonald v. Rockhill Iron & Coal Co., 135 Pa. 1.

OPINION BY MR. JUSTICE POTTER, July 6, 1911:

In this action, Catharine Ferry sought to recover damages for the death of her husband, alleged to have been due to the negligence of the defendant company. Daniel Ferry, the husband of plaintiff, was employed by the defendant company as foreman of laborers. On the morning of the accident, the men were employed in piling material in a storehouse. Mr. Ferry was seen with his men, and a few moments later was found crushed under a freight elevator, at the side of the building and in front of an opening or passageway through the wall, where the elevator was located. No one saw the accident, and there was no evidence as to how the deceased happened to be caught under the elevator, or as to what he was doing at that place. At the close of the testimony for the plaintiff, the trial judge entered judgment of compulsory nonsuit, and from the refusal to take it off, this appeal has been taken.

The defendant company was charged with negligence in failing to guard the space in the floor of the building upon which the elevator descended, so as to prevent employees and others from walking unawares under the elevator when it was raised. Neglect of duty was also charged, in the failure to provide the elevator with a gong or bell or some device to give warning in advance of the descent of the elevator to anyone who might be under it. In the absence of these precautions, it was alleged that the operation of the elevator was dangerous, and rendered the place unsafe for the workmen, and others. In actions of this character, there must of course be affirma-

tive proof of negligence, before recovery can be had. But it is not always essential that there should be an eyewitness of the occurrence. The proof may be furnished by the circumstances themselves. The test is whether they are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant. The discussion of this principle by Judge AGNEW, in Allen v. Willard, 57 Pa. 374, is instructive. The doctrine there laid down was cited with approval and applied by our Brother STEWART in the late case of Tucker v. Railway Co., 227 Pa. 66, where he said with reference to the facts then before him, "No one witnessed the occurrence, and, therefore, no one can testify how it did actually happen. The case is not very peculiar in this respect. Accidents in which life is lost not infrequently occur unwitnessed. Such fact in itself does not operate to protect one whose negligence can be shown from the general situation and circumstances to have been the operative cause. When these are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the party charged, liability attaches." Other late cases in which, while there were no eyewitnesses of the accident, it was held that the circumstances were such as to require the submission of the question of negligence to the jury, are Henderson v. Refining Co., 219 Pa. 384, and Millum v. Coal Co., 225 Pa. 214. See also the opinion in McManamon v. Hanover Township, post, p. 000, and authorities there cited.

Turning now to the evidence upon the part of the plaintiff in this case, to gather the facts that shed light upon the accident, it appears that at the time, the defendant owned and occupied for storage purposes a large two-story brick building at the northwest corner of Fifteenth and Huntingdon streets, Philadelphia. The building was divided into two compartments by a brick wall running north and south, on each side of which was a car track parallel with the wall. In this wall, a short distance from the Huntingdon street wall, was an opening

or doorway, which extended from the floor upward. Guideposts were erected at each side of this opening, which were joined together about three and a half feet from the floor by an iron bar. On the guideposts, a freight elevator, with a platform eight or ten feet square, ran to the second story, eighteen or twenty feet above. When lowered the elevator reached the floor, where the west track ran, but did not go below it. A witness described it as "nothing more than a plain platform elevator, a frame elevator—all open." There were no guards to prevent people from passing into the space under it, when the elevator was raised. No gong was provided, nor was there any other device to give notice when the elevator was descending. The evidence showed that the only way such notice was given was by some one on the elevator calling out, as it came down, "Look out at the bottom." The elevator was operated by electricity, and ran very quietly. The plaintiff showed by a city inspector, that he had inspected this elevator on January 14, 1907, and had reported that it should have a gong attached to it, in order to warn persons below when it was about to descend. There was evidence to show that a copy of this report was sent the same day to the president of the defendant company, but no gong had been attached before March 2, 1907, the date of the accident. Expert witnesses testified that an elevator such as this, uninclosed and without gong or rope attachment, was not a reasonably safe device or apparatus. One witness testified that among the trade such an elevator would be called a "trap." The opening in the wall was at times used by the employees in the building as a passageway from one side of the building to the other. The only other way of reaching the east side, where the office was located, from the west side or vice versa, was by going out on Huntingdon street and around. Between the place where the men were working, and the opening in the wall, where the elevator was located, there was a pile of rails, fifteen or twenty feet high, which prevented the workmen

from seeing the place. There was no load on the elevator, nor was there any person on it, when Ferry was discovered. He was found fastened between the elevator and the iron bar across the opening in the wall. According to one witness he appeared to have been actually under the platform of the elevator, and had tried to get out. Presumably the deceased was acting in the discharge of his duty as foreman of the laborers, at the time. There is also the presumption in the absence of any proof to the contrary, that he exercised due care under the circumstances, for his own protection. Something called him to the opening or doorway through the wall. It is a fair inference that while there, the elevator, operated by electricity, and moving quietly, descended unnoticed upon him and caught him. What brought the elevator down, did not appear. But it is argued that if due warning by means of a gong or bell or other suitable equipment had been given, the deceased could have escaped. We have then the fact of an elevator not equipped with warning signals, permitted to work quietly up and down in a space not guarded from access, but where workmen were at liberty to walk or stand, in the use of the floor, and which space was apparently directly in the line of their approach to an opening or doorway leading to another portion of the building. Then the decedent was found in this space, and at the doorway, crushed by the elevator. From a consideration of all circumstances disclosed by the evidence, we cannot say that reasonable and well balanced minds might not fairly conclude that the accident resulted from negligence by the defendant. Whether it did or not, was for the jury to say, as it was for them also to determine the question of contributory negligence upon the part of the person who was killed.

The motion to take off the nonsuit should have been granted. The second assignment of error is sustained, and the judgment is reversed with a procedendo.