## Madden v. Lehigh Valley Railroad Company, Appellant.

*Negligence—Railroads—Brakeman—Death—Evidence.*

1. In cases to recover damages for death, although there must of course be affirmative proof of negligence before recovery can be had, it is not always essential that there be an eye witness of the occurrence. The proof may be furnished by the circumstances themselves; the test is whether they are such as to satisfy reasonable and well balanced minds that the accident resulted from the negligence of the defendant.

2. In an accident case, before the maxim, volenti non fit injuria, can be invoked, it must be shown that the person injured or killed not only knew, or had full opportunity to know the circumstances, but that he appreciated, or should have appreciated the extent of the danger, and that he voluntarily exposed himself to it.

3. In an action against a railroad company to recover damages for the death of one of its brakemen, a verdict and judgment against the company will be sustained where the evidence showed that at the time of the accident, the defendant was standing on the steps of the tender of a freight engine which was backing into a switch to couple a car, that the deceased with his right hand had hold of the grab bar to keep himself in place, while in his left hand he had a lantern with which he was giving signals to the engineer, that suddenly the lantern flickered up and the decedent went down out of sight of the engineer; that at the point where the deceased fell there was a pile of ashes of a depth of two feet covering the ends of the sleepers; and that the situation of the decedent's body in relation to the pile of ashes justified an inference that the ashes came in contact with his feet and pushed or dragged them from under him, causing him to fall.

4. Where there is any doubt that an employee was acquainted with the risk, the determination of the question is necessarily with the jury.

Argued March 11, 1912. Appeal, No. 117, Jan. T., 1912, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1909, No. 119, on verdict for plaintiff in case of Flossie M. Sheldon Madden v. Lehigh Valley Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before CAMERON, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,750. Defendant appealed.

*Error assigned* was in refusing binding instructions for plaintiff.

*Lilley & Wilson,* for appellant.—The trouble with the plaintiff's case is, that it rests wholly upon a supposable theory not supported by established facts: Philadelphia & Reading R. R. Co. v. Schertle, 97 Pa. 450; Cavanaugh v. Allegheny County Light Co., 226 Pa. 86; Burrell v. Gowen, 134 Pa. 527; Welsh v. R. R. Co., 181 Pa. 461; Wannamaker v. Burke, 111 Pa. 423; Alexander v. Water Co., 201 Pa. 252; Ford v. Anderson, 139 Pa. 261; Ill. Central R. R. Co. v. Cathey, 70 Miss. 332 (12 So. Repr. 253); Wintuska v. R. R. Co., 14 Ky. Law Rep. 579 (20 S. W. Repr. 819).

Decedent assumed the risk: Reese v. Clark, 146 Pa. 465; Cracraft v. Limestone Co., 210 Pa. 15; Meixner v. Brewing Co., 210 Pa. 597; Fulford v. R. R. Co., 185 Pa. 329; Diehl v. Iron Co., 140 Pa. 487; Rumsey v. R. R. Co., 151 Pa. 74; Nuss v. Rafsynder, 178 Pa. 397; Bowen v. Pa. R. R. Co., 219 Pa. 405; Green and Coates Street Railway Company v. Bresmer, 97 Pa. 103; Brossman v. R. R. Company, 113 Pa. 490.

Chas. M. Culver and E. M. Dunham, with them D. O. Decker, for appellee, cited Allen v. Williard, 57 Pa. 374; Phila. & R. R. R. Co. v. Huber, 128 Pa. 63; Tucker v. Ry. Co., 227 Pa. 66; Hoffman v. Clough, 124 Pa. 505; Patterson v. R. R. Co., 76 Pa. 389; Kehler v. Schwenk, 151 Pa. 505.

OPINION BY MR. JUSTICE MOSCHZISKER, April 15, 1912:

The plaintiff was the wife of Clarence Sheldon at the time of his death; she afterwards intermarried with one Madden. On January 14, 1908, Sheldon had his head cut off while in the employ of the defendant company. The circumstances under which this occurred are fairly outlined in the following excerpt from the opinion of the court below: "Along the main line of the defendant's railroad there are two switches side by side, seven feet four inches apart at the place where the accident occurred............ The defendant company sometime in November, 1907, deposited ashes between these switches filling the entire space............to a depth of two feet at the deepest place, and sloping down to the rail on each side, covering the ends of the sleepers. ........ The decedent was head-brakeman on a local freight, and had ridden over the ground where the ashes were deposited a great many times since they were put there. On the night of the accident the engine of the local freight was backing down into the switch to couple a car: The decedent was standing on the steps on the right hand side of the tank or tender near the rear end thereof on the side where the ashes lay. He had hold of the grab-bar to keep himself in place, with his right hand and had a lantern in his left, with which he was giving signals to the engineer to guide him in backing the engine and tender to the car that was to be coupled. The engineer says he was watching the signals when all at once the lantern flickered up, and the decedent went down out of sight. He stopped his engine,

got down to look for him, and found his shoulders laid against the engine trucks, and his feet laid upon the ashes between the two switches, and his head nearly under the front of the pilot; his body at right angles with the track, and his shoulders lying against the wheels of the engine.............. The lower step is a foot above the surface of the rail; the steps are about even with the sides of the tank, and are twenty-eight inches outside of the rail toward the ashes and a foot above the rail; this would place his feet out twenty-eight inches toward where the ashes were about two feet deep......... The switches were seven feet and four inches apart; if the ashes were two feet high in the center and sloped gradually to the surface of the rail, that would make them two feet high, forty-four inches outside of the rail, and the highest point would be sixteen inches from the step........... Some of the witnesses said the steps scraped through the ashes at the point where the accident occurred and that the ground was frozen.........."

In submitting the questions involved, the trial judge, inter alia, said: "From this evidence, and the evidence as to the depth of the ashes, the form the ashes were left in, and the shape of the steps on which decedent stood when the accident occurred, the plaintiff asks you to say, that the ashes piled up as they were along the railroad came in contact with the feet of the decedent, and pushed or dragged them from under him, causing him to fall on the rail, thus causing his death............. If you are satisfied by a preponderance of the evidence that the accident was thus caused, there is another question to be considered by you before you can find for the plaintiff; and that is, did the decedent know, or did he have, with ordinary prudence and under the circumstances, the means of knowing the dangerous character of this pile of ashes, if it was dangerous, and that the presence of the ashes made the discharge of his duties more dangerous. If you find that he knew it or by the

exercise of ordinary care and prudence under the circumstances he had the means of knowing and should have known the dangerous character of the ashes, he assumed the risk arising from the presence of the ashes, and therefore, the plaintiff cannot recover............
If you find, however, that he had not that knowledge, and had not the means of obtaining that knowledge by the use of ordinary care and prudence under the circumstances, and further find that he met his death by the negligence of the defendant in placing and keeping those ashes where they were, without contributory negligence on the part of the decedent, it will then be your duty to consider the damages that plaintiff has sustained by reason of the death of her husband."

The defendant contends that the evidence was not sufficient to show that the ashes caused or contributed to Sheldon's death; that, if this is not so, then it was clear that Sheldon had notice of the danger and it was one of the risks of his employment; and, lastly, that the fellow-servant rule would defeat a recovery. After a study of the evidence and a consideration of the authorities relied upon, we do not think any of these contentions can be sustained.

While no witness was able to give direct testimony describing exactly what happened at the precise time of decedent's fall to the ground, yet from the evidence of those who actually saw and knew the details, the facts stated by the court below could justifiably be found and the jury could have reasonably concluded that Sheldon was in a position where his heel would come in contact with the ashes, and that this caused the accident which brought about his death.

"In cases to recover damages for death, although there must of course be affirmative proof of negligence before recovery can be had, it is not always essential that there be an eye witness of the occurrence. The proof may be furnished by the circumstances themselves; the test is whether they are such as to satisfy reasonable and well-

balanced minds that the accident resulted from the neg-
ligence of the defendant:" Ferry v. Phila. Rapid Tran-
sit Co., 232 Pa. 403. For other applications of this rule
see McManamon v. Hanover Township, 232 Pa. 439;
Tucker v. Pittsburgh C. C. & St. L. Ry. Co., 227 Pa. 66;
Phila. & R. R. Co. v. Huber, 128 Pa. 63. The present
case falls under the principle of these authorities; the
strong probability is that the accident occurred as found
by the jury, and no other reasonable theory upon which
to account for it is suggested by the evidence. We con-
clude that the court below committed no error in hold-
ing the evidence sufficient to support the verdict.

The piles of ashes presented a temporary danger inci-
dent to the place in which Sheldon was employed rather
than one of the regular risks of his employment. Before
the maxim, volenti non fit injuria, can be invoked, it
must be shown that the plaintiff not only knew, or had
full opportunity to know, the circumstances, but that
he appreciated, or should have appreciated, the extent of
the danger, and that he voluntarily exposed himself to
it. "This makes the question of assumption of risk, one
of fact, unless from the nature of the case it is clear of
dispute in this connection:" Valjago v. Carnegie Steel
Co., 226 Pa. 514, 519. Although the decedent passed the
point where he was killed just before the accident and
had been over it in the performance of his duties at
other times, it is not clear that he was in a position to
see and appreciate the danger presented. Particularly
is this so when we consider the testimony of the de-
fendant's witness Kane,—its supervisor of tracks who
had charge of the deposit of ashes in question,—to the
effect that so far as he could see they presented no dan-
ger. This apparently was an instance where the risk
was difficult to estimate, and under such circumstances
the case was for the jury. "Where there is any doubt
whether the employed was acquainted or should have
been acquainted with the risk, the determination of the
question is necessarily for the jury:" Rummell v. Dil-

worth, 111 Pa. 343, 351. On this general subject see also Stewart v. Central R. R. of N. J., 235 Pa. 311. The words used by Chief Justice ˙STERRETT, in Vorhees v. Railway Co., 193 Pa. 115, 120, "Whether from his experience, or from opportunities of examination afforded him before the time of the accident or otherwise, he knew, or ought to have known, the danger .........were necessarily questions of fact for the jury," are appropriate here. It only remains to be said that the fellow-servant rule has no application to this case.

The assignments of error are overruled and the judgment of the court below is affirmed.