## NASH v. RAUN.

No. 8601.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 19, 1944.

Decided May 14, 1945.

Thomas D. Caldwell, of Harrisburg, Pa. (Franklin B. Hosbach and Hosbach, Good & Fischer, all of Erie, Pa., and Caldwell, Fox & Stoner, of Harrisburg, Pa., on the brief), for appellant.

John B. Brooks, of Erie, Pa. (Brooks, Curtze & Silin, and Maurice Coughlin, all of Erie, Pa., on the brief), for appellee.

Before GOODRICH and McLAUGH-LIN, Circuit Judges, and BARD, District Judge.

BARD, District Judge.

This is an appeal from an order denying defendant's motions for new trial and to have judgment for the plaintiff set aside, notwithstanding the verdict, under Rule 50 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Plaintiff brought a civil action for damages founded on an automobile accident which occurred on October 9, 1941, in Erie County, Pennsylvania, at the right angle intersection of Route 89 and Station Road. Route 89, a through highway, runs north and south, and Station Road, the intersecting highway, runs east and west.

Plaintiff was driving an automobile proceeding westwardly on Station Road, and defendant was driving a heavy truck in a northerly direction on Route 89.

Plaintiff offered no "eyewitness" testimony as to what occurred at the intersection. He testified that severe injuries to his head induced loss of memory as to everything happening between a time shortly prior to the collision and the moment he regained consciousness some time after the accident. Plaintiff's case, therefore, is based on circumstantial evidence.

Witnesses on behalf of the plaintiff, who live about 300 feet from the intersection, testified they heard a loud crash about 7:30 a. m. Upon proceeding to the scene of the accident they found plaintiff's car standing upright in a ditch paralleling the west side of Route 89, about 25 to 30 feet north of Station Road facing the intersection. The center part of the left side of the car was crushed, the front door on the right side open, and the front seat and contents were outside the car. There was no damage to the front of the car, the headlights were lit, and the engine running. Plaintiff was lying a few feet back of the car with his head in the ditch and his feet on the embankment. He was unconscious and was apparently severely injured.

Defendant's truck was also on the west side of Route 89 about 12 or more feet north of plaintiff's car. The truck was lying on its side with its engine facing south toward the intersection. The front fenders were somewhat damaged and the middle of the front axle was four inches in front of the wheels and was bent in the shape of a bow. Milk cans carried on the truck were scattered over the road.

There were tire marks on the right side of Route 89 approaching the intersection which were visible for about 30 feet from the center line of the intersection. The marks were such as would be made by the skid of a tire over a concrete surface. There were other tire marks beginning about the center of the intersection and running in the direction of the plaintiff's car where it rested in the ditch. They were not too distinct, about five or six inches wide, and of a "wavery" nature.

The view of a driver proceeding north on Route 89 is obscured by a row of trees on the right side of an embankment "several feet" high on the southeast corner of the intersection. A driver proceeding west on Station Road must reach within six or eight feet of the intersection before a clear view of Route 89 is available. The visionary hazard was increased at the time of the accident by a fog which reduced the range of vision to "from 50 to 100 feet". There

is a stop sign on Station Road east of the intersection.

Upon conclusion of plaintiff's testimony, the defendant moved for a directed verdict, which was denied by the trial court.

Defendant then testified that he was driving 25 to 30 miles an hour on a slight up-grade; that he looked both ways as he approached the intersection and saw no cars approaching; that plaintiff's car flashed into view from the right going about 50 miles per hour when defendant was about six feet from the intersection; and that although he applied the brakes, he was unable to avoid the collision.

The jury returned a verdict for the plaintiff.

█ The principal question presented by this appeal is whether the evidence recited above was sufficient, under Pennsylvania law, to permit the jury to find that the defendant was negligent. We think the trial court erred in holding that it was.

█ Plaintiff argues that the evidence shows that defendant was traveling at an excessive rate of speed and failed to have his car under proper control. He relies on the principle that the driver of a motor vehicle is required to keep his car at a speed and under such control that he can stop within the distance he can see ahead, Janeway v. Lafferty Bros., 323 Pa. 324, 185 A. 827, which may be. reduced by atmospheric conditions or other visual obstructions. Simrell v. Eschenbach, 303 Pa. 156, 154 A. 369; Shoffner v. Schmerin, 316 Pa. 323, 175 A. 516. While the testimony showed that defendant's vision ahead was limited by the fog to "from 50 to 100 feet", the skid marks [1] on Route 89 extended for only 30 feet before reaching the center line of the intersection. If the defendant could have stopped his truck within the distance he could clearly see ahead, i. e., 50 to 100 feet, it cannot be said that he was driving at a negligently excessive rate of speed, there being no other variable factors present. The law does not require that the speed be such that a driver can avoid hitting an object that suddenly appears a short distance before him. To do so would impose too great a burden upon the driving public. If the obstacle is for the first time within the driver's view, after the driver has passed the point of assured clear distance ahead, the measuring point having been reached and passed, then the defendant cannot be said to be driving at a negligent speed and without his vehicle under proper control merely because he cannot now avoid a collision. Stark v. Fullerton Trucking Co., 318 Pa. 541, 179 A. 84. At best, the evidence indicated that plaintiff's car first came into view after the defendant had passed the measuring point (50 to 100 feet before the intersection).

█ The position of the two vehicles after the accident was also strongly relied upon by the plaintiff as proof of defendant's negligence. Plaintiff contended that the position in which the defendant's truck rested at a point approximately 50 feet north of the intersection indicated a negligently excessive rate of speed. The defendant contended that the "top-heavy" truck swung in a wide arc after the sudden stop and that centrifugal force turned the truck around and threw it up the road. Either theory is logical. Only a skilled physicist by using complicated formulae might explain what actually did happen. Evidence which tends to support two conflicting hypotheses tends to support neither and the circumstantial evidence, as presented, leaves the question of the defendant's speed in a conjectural vacuum.

█ The other circumstances relied on by the plaintiff,—the noise of the collision, the position in which the plaintiff was found, the scattered milk cans—are all indicative of the great force of the collision. But plaintiff failed to establish that the force with which the defendant struck the plaintiff was such that the defendant could not have stopped his truck within the "fifty to one hundred feet" which the law allowed him under the circumstances. Although the evidence might support a finding that defendant could not stop his truck within 30 feet—the length of the skid marks—there is no substantial proof whether he could have stopped within 50 to 100 feet. Without this proof plaintiff has not proved negligence. Although it is not necessary to prove negligence by direct evidence, the plaintiff must at least establish circumstances from which negligence may be inferred. Ranck v. Sauder, 327 Pa. 177, 193 A. 269; Delmer v. Pittsburgh Railways Co.,

---

[1] It is doubtful whether these marks were sufficiently identified as having been made by defendant's truck, Johnson v. Philadelphia & Reading Ry., 283 Pa. 480, 129 A. 569; Hoover v. Reichard, 63 Pa. Super. 517, but for present purposes it will be assumed that they were.

348 Pa. 147, 34 A.2d 502; Madden v. Lehigh Valley R. Co., 236 Pa. 104, 84 A. 672. The duty rests upon the plaintiff to so picture the facts upon which he bases the liability of the defendant as to enable the jury to visualize the occurrence and form an independent judgment thereon. Mack v. United States Gypsum Co., 288 Pa. 9, 135 A. 623; Lithgow v. Lithgow, 334 Pa. 262, 5 A.2d 573. The mere fact that there was an accident and that the plaintiff was not himself negligent does not, per se, mean that the defendant must have been negligent. Sajatovich v. Traction Bus Co., 314 Pa. 569, 172 A. 148; McAvoy v. Kromer, 277 Pa. 196, 120 A. 762; Flanigan v. McLean, 267 Pa. 553, 110 A. 370; Erbe v. Philadelphia Rapid Transit Co., 256 Pa. 567, 100 A. 966. The circumstantial evidence presented in the present case is as consistent with the theory that the defendant was not negligent as it is with the theory he was. If the plaintiff cannot show the possibility of a conclusion of defendant's negligence supported by a clear preponderance of its likelihood, Ott v. Boggs, 219 Pa. 614, 69 A. 61, and excluding other probabilities just as reasonable, Alexander v. Pennsylvania Water Co., 201 Pa. 252, 50 A. 991, the plaintiff should not be permitted to go to the jury. The circumstances must compel the conclusion that the defendant was negligent. Pfendler v. Speer, 323 Pa. 443, 185 A. 618. The jury may not be allowed to guess.

The order denying defendant's motion to set aside the verdict and judgment is reversed and entry of judgment for the defendant is directed.

The order denying a new trial is affirmed.