## Kerwood v. Rolling Hill Corporation, Appellant.

Argued December 6, 1966.   Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Tom P. Monteverde,* with him *George P. Williams,
III,* and *Schnader, Harrison, Segal & Lewis,* for appel-
lant.

*William J. Toy,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 20,
1967:

Mrs. Catherine A. Kerwood was seriously injured
when she slipped on the floor of the Rolling Hill Hos-
pital, which was covered with rain water.   She brought
an action of trespass against the owners of the hospital
and recovered a verdict.   The defendant Rolling Hill
Corporation has appealed, seeking judgment n.o.v. or,
in the alternative, a new trial.

It is fundamental law requiring no citation that the
proprietor of an establishment open to the public is

required to maintain it in a reasonably safe condition for its patrons and business visitors. Mrs. Kerwood is a private nurse and had come to the hospital the night of August 12, 1958, to administer care and attention to an injured person she had accompanied in an ambulance and who had been taken into the hospital on a litter by the driver of the ambulance and a first aid assistant. It had been raining that night and water had accumulated on the floor of the enclosure into which the litter bearing the patient had been wheeled.

The floor was constructed of terrazzo which, added to the rain water sloshing over it, produced a slippery surface that did not hold the wheels of the litter in traction. The rear wheels swiveled to the side, instead of remaining forward, and the vehicle headed for the wall. Mrs. Kerwood sought to stop the movement of the litter and took two quick steps forward when her feet flew from under her and she fell heavily, with consequent injuries.

There was evidence that a rubber mat overlay the terrazzo floor but that on this particular evening, because of the rain, it had been lifted from the floor and put aside. A hospital attendant was standing by with a mop and bucket. Following the accident he was seen to mop the floor and then replace the rubber mat.

Mrs. Kerwood had entered this hospital on previous occasions and she knew, by repeated experience, if not by conscious recollection, that there was nothing about the floor to give her any concern about safety. The rubber mat on the hallway floor would prevent pedal insecurity. But on this particular night, without any notice to her, the security had been removed. The removal of the mat could have been for a useful purpose but, considering the nature of the locale, this being the emergency entrance to a hospital, with people moving rapidly in and out, the absence of the mat could produce a hazardous situation. In the lawsuit

which arose from Mrs. Kerwood's fall, a question of fact was presented as to whether the hospital exercised adequate care in not informing those about to move through the hallway about the absence of the mat. In *Dougherty v. Philadelphia National Bank,* 408 Pa. 342, we sustained a verdict for the plaintiff who had fallen on the floor in a bank because the rubber matting there was not large enough to cover an area which had been made wet by snow and ice tracked into the bank. The opinion in that case made reference to a similar case decided by the Superior Court: "In a case very similar to the instant one, Cohen v. Food Fair Stores, Inc., 190 Pa. Superior Ct. 620, 155 A. 2d 441 (1959), the Superior Court affirmed the refusal of the lower court to grant judgment n.o.v. where on a rainy day the plaintiff wife slipped on a terrazzo floor of a supermarket immediately after entering the door. Despite the fact that the plaintiff admitted seeing the floor was wet and that she was not wearing galoshes as in the instant case, the court stated: 'We cannot say, under the circumstances of this case, that the plaintiff was guilty of contributory negligence as a matter of law, but, rather, that the question of contributory negligence was one for the jury.' "

In *Katz v. Wanamaker,* 381 Pa. 477, we held that the issue of negligence was for the jury where it appeared that water with accompanying dirt was tracked and accumulated upon a flight of from 20 to 25 smooth marble steps leading from the main and entrance floor in a large department store, that the steps were very wet with mud on them, that this condition had remained the same for an hour without any attempt to remedy it, and that a business visitor had slipped on the steps and was injured.

In the case at bar the dangerous condition, through the absence of the rubber mat, prevailed for at least 15 minutes, but this brevity did not in itself diminish

the responsibility of the proprietor to its business visitors. Short as is 15 minutes as against an hour, a day, or a month, it is still long enough to encompass the happening of dreadful and irreparable deeds. A calamitous fall, a pistol shot, or an automobile collision may effect ruin in seconds. When the hospital attendant lifted the rubber mat, he, in effect, lifted the drawbridge between safety and danger and he should have been standing guard to prevent patrons from plunging into disaster.

The accident, as indicated, occurred at the emergency entrance to the hospital. Here, particularly, it is obvious that care should be exercised to prevent further disablement to those already struck down by violence or disease and those shepherding them to refuge and repair. Of course, the impossible should not be demanded or expected. If a cloudburst had occurred at the moment Mrs. Kerwood arrived and raging waters had swept through the door, washing away the rubber mat, the hospital authorities could not be expected to restore order and dryness in seconds. But that was not this case. It had been a night of inclement weather and for hours rain had invaded the inner hall of the hospital on its own feet and on the feet of others. What was reasonably to be expected of the hospital authorities in such a situation? The trial judge left this properly to the fact-finders under guidelines laid down by law. He said: "I pointed out that this lady is a business invitee and she is owed a duty of reasonable care. There is a responsibility upon the defendant to provide a reasonably safe entryway here in the hospital. There is no question here of the hospital authorities having notice of the outside conditions because, obviously, the mat was there because they did know of the outside conditions. A mat had been provided. . . . In considering whether or not a proper degree of care was exercised by the hospital

authorities, or in finding whether or not there had been a violation of the responsibility which was owed to these people, you will consider all the factors which you are aware of here, that it was raining, that people did use this door, that the hospital had notice of the outside condition, apparently, because the man was mopping up the floor, that he saw fit to remove the mat as he mopped up the floor. Then you arrive at the conclusion as to whether or not there was a dangerous condition and whether or not this was a dangerous condition created by the act of the hospital attendant."

The jury found that the hospital had created a dangerous condition by the act of its employee. It is significant that the defendant did not call the hospital attendant to testify. Thus the conditions described and the action related by Mrs. Kerwood and the driver of the ambulance, Samuel Orlean, went uncontradicted.

Although the defendant admits that the question of contributory negligence was resolved by the jury and is, therefore, not a matter for argument here, it still insists that the janitor had "no duty to give plaintiff a specific warning that he was mopping the floor, inasmuch as his activities were being carried on in plain view in a well lighted hallway."

This argument overlooks that the litter had preceded Mrs. Kerwood into the hallway, thereby blocking her view of what the janitor might have been doing, and that, in addition, the litter lunged toward the wall immediately after Mrs. Kerwood had passed through the door.

The defendant complains that the judge erred in refusing its point for charge No. 10: "Defendant was under no duty to post signs or otherwise give specific notice that the mopping operation was going on at the time plaintiff's party entered the hospital because the

mopping operation was being conducted in plain view of those entering the emergency door and it was actually observed by Mr. Orlean." The court properly refused this point. What Mr. Orlean saw cannot be charged to the nurse, Mrs. Kerwood, who followed the litter.

The defendant in addition contends that the court erred in refusing its Points Nos. 4 and 7. We have read these points in the light of the entire charge and find that their refusal in no way prejudiced the defendant's case before the jury, since the matters covered therein were embraced in the charge.

Judgment affirmed.

Mr. Chief Justice BELL dissents.