## Koutsonikas v. Riddle Memorial Hospital

*Herman Bloom* of *Bloom, Ocks & Fisher,* and *Howard Kline,* for plaintiff.

*John S. Brooks,* for defendant.

REED, JR., J., May 4, 1971.—Plaintiff, while a patient at Riddle Memorial Hospital, Middletown Township, Delaware County, sustained a "pathologic transcervical fracture" of her right hip. Plaintiff, a minor, by her father as parent and natural guardian, brought this action in trespass to recover damages for that injury against defendant hospital.

At the conclusion of plaintiff's case, the trial judge sustained defendant's motion for a compulsory nonsuit on the ground that plaintiff had failed to establish a prima facie case of negligence against defendant. Plaintiff has filed a motion to remove the nonsuit, which is now before the court en banc for disposition.

In considering plaintiff's motion, the court will accept as true plaintiff's evidence, and draw all reasonable inferences of fact in light most favorable to plaintiff: Watkins v. Sharon Aerie No. 327 F.O.E., 423 Pa. 396, 223 A.2d 742 (1966).

Plaintiff, a 17-year-old junior college student, was admitted to defendant hospital on October 24, 1966, for tests and observation to diagnose the cause of complaints of fatigue, back pain and aches in her elbows and feet. Various tests were administered, including blood tests, and X-rays, prior to October 27th, when she was catheterized for the purpose of collecting urine for testing. She was to remain in bed, with a tube inserted into her urethra and going to a receptacle bag at the bedside. The mechanism apparently malfunctioned, and the bed became wetted.

At about 7:30 p.m., an attending nurse was informed of the condition. The nurse thereupon removed the tube, and asked if plaintiff still had to relieve herself. Plaintiff said, "Yes."

The nurse then said, *"Go into the bathroom and use the bedpan, it is on the floor."* The nurse left the room.

Plaintiff had an attending physician. Plaintiff's chart indicated no special care nor restrictions for plaintiff, who had ambulatory privileges. Her mother was in the room with her at the time of this incident.

Plaintiff was in a semi-private room, with bath. She went into the bathroom alone, picked up the bedpan and placed it on the top of the toilet seat. She then sat down on the bedpan, and started to void, whereupon the bedpan slipped out from under her, and she came down on the seat. This fall allegedly caused the fracture.

Plaintiff had no previous experience with a bedpan.

The bedpan was made of hard plastic, oval in shape, 11 inches wide at the back, and 5½ inches wide at the front, and 14 inches long; and went from 4½ inches in depth at the front to three inches in depth at the back, the widest part. It had curved sides and a generally flat bottom, with a slight joint-ridge around the outside of the bottom. It looked like any other bedpan. Plaintiff's fall was from and to a sitting position, evidently no more than 4½ inches.

Plaintiff offered a registered nurse of one and one-half years' experience in or with some hospitals in Philadelphia. She testified that in her experience the bedpans she used were made to be inserted into the toilet bowl, with seat raised. The seat would then be put down and the toilet used in regular fashion. She added that specimens such as this one, were obtained in her experience either by use of a graduate pitcher with patient in a standing position, or by the use of a bedpan as she described.

There was no evidence that the bedpan in question could be used by insertion into the bowl as this nurse described, nor of any procedures in these regards at defendant hospital.

Plaintiff contends the trial judge erred in granting the nonsuit, and that plaintiff made out a prima facie case of negligence against defendant hospital.*

A nonsuit will not be removed, if upon review of the evidence recited, reasonable and well-balanced minds can be satisfied that the accident was not caused by the negligence of defendant: Ferry v. Philadelphia Rapid Transit Company, 232 Pa. 403, 81 Atl. 426 (1911), Giordano v. Clement Martin, Inc., et al., 347 Pa. 61, 31 A.2d 504 (1943); Van Tine v. Cornelius, 355 Pa. 584 (1947).

---

*Defendant filed no answer to plaintiff's complaint and admits agency between nurse and defendant.

Cases concerning nursing care are few, and we are unable to find any applicable Pennsylvania cases. Plaintiff cites Kerwood v. Rolling Hill Corporation, 424 Pa. 59, 225 A.2d 918 (1967), which dealt with a nurse reporting for duty, who slipped on a wet floor, and establishes a hospital's duty to provide safety for the public and patients generally. That case is inapplicable here.

Our consideration and research leads us to the following rule, which we adopt as controlling of the case before us:

"In the performance of her professional duties, a nurse is required to exercise ordinary or reasonable care to see that no unnecessary harm comes to her patient": 51 A.L.R. 2d 972, et seq.

And the applicable standard of care, against which a nurse's conduct should be measured, is predicated upon the degree of care ordinarily exercised by other nurses in the locality, or in similar localities: A.L.R., supra.

The Restatement, Second Torts, section 299A, supports this rule, though by different language:

"Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

The facts of this case are simple enough to be grasped by laymen, and we agree with plaintiff that this case comes within the exception in Robinson v. Wirts, 387 Pa. 291, 127 A.2d 706 (1956). Expert testimony is always needed in appraising the skill and propriety of professional conduct (there, a doctor), except where the matter under investigation is so simple and the question of lack of skill or want of

care so obvious as to be within the range of the ordinary experience and comprehension of laymen.

The collecting of a urine specimen is a routine matter, within the comprehension of everyone, by the nature of the physical function involved. Anyone with ordinary knowledge of the physical makeup of a woman, and that would include almost all adults, can grasp and envision how a woman would go about performing the act of collecting a specimen.

Plaintiff's nurse-witness' testimony therefore was not needed, unless plaintiff sought thereby to establish a standard of nursing conduct. Her testimony as to how, in her experience, specimens may be collected is at best instructive and informative, but does not establish a standard of professional nursing conduct, because, in the first place, it was not so offered, and, in the second place and more importantly, it did not offer to establish that the nurse's instruction was improper or violative of some standard. Hence, this witness' testimony had little probative value, except to indicate there are various ways a specimen can be collected; and to give it probative value would make it conjectural to the question of a standard of conduct. It must be discounted: Collins v. Hand, 431 Pa. 378, 246 A.2d 398 (1968).

Having freed the case of need for any expertise, we conclude, applying the rules, supra, that ordinary people could decide the question of whether or not this nurse, as a nurse, exercised reasonable and ordinary care to avoid a foreseeable risk of harm to her patient when she instructed her to use the bedpan.

With this, we are convinced as a matter of law that on review of the evidence, reasonable and well-balanced minds would agree that this nurse did not act negligently as respects this plaintiff.

This plaintiff, a 17-year-old girl, of normal intelligence, without limitations or notice of any disability, and with unrestricted ambulatory privileges, was in the hospital for tests. A reasonably prudent nurse could not have imagined that this girl would attempt to use the bedpan in the manner she did, much less could she anticipate, without one bit of knowledge otherwise, that if plaintiff did, she would suffer consequential injury at all.

On review, the nurse, in so routine a matter, had a right to naturally and reasonably anticipate that plaintiff would do one of three things: (1) use the bedpan in a standing-squatting position, holding it partially between her legs; (2) bring it back to the bed and position herself on it; (3) if confused, have asked for the nurse's guidance.

The nurse did not have a duty to guard against every possible risk, but only to prevent probable hazards: Kimble v. MacKintosh Hemphill Co., 359 Pa. 461, 59 A.2d 68 (1948); Camp v. Allegheny County, 263 Pa. 276, 106 Atl. 314 (1919). She could not reasonably foresee that plaintiff would attempt so unnatural, inconsistent and unworkable an effort as to place the bedpan over the seat without direction to do so. There was no evidence that it could be, had been or should be so used. As a matter of fact, plaintiff's own case establishes that bedpans are not, and most likely cannot, be so used.

The foreseeable risk of harm is practically imperceptible in the circumstance, and reasonable men cannot conclude otherwise. We can, though, envision instances where a nurse, confronted with a similar demand, might be held to a higher duty of care which would depend upon the patient's condition and the known probabilities of harm. An elderly, unsteady woman, a person with known mental or pertinent

physical infirmity, an incontinent person, are some possible examples.

The nonsuit will not be removed, otherwise defendant hospital becomes the absolute guarantor of the safety of its patients, and this is unrealistic and unwarranted.

### ORDER

And now, May 4, 1971, plaintiff's motion to remove nonsuit is denied.